FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

2009 NOV 24  A 9: 23

DISTRICT ...

```
- - - - - - - - - - - - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA              :
  and STATE OF CONNECTICUT,           :
                                      :
            Plaintiffs,               :
                                      :        Civil No. 3:09-cv-1515 (SRU)
         v.                           :
                                      :
TOWN OF SOUTHINGTON, et al.,          :
                                      :
            Defendants.               :
- - - - - - - - - - - - - - - - - - - - - - - - - - x
```

**CONSENT DECREE FOR REMEDIAL DESIGN
AND REMEDIAL ACTION REGARDING
OLD SOUTHINGTON LANDFILL SUPERFUND SITE**

TABLE OF CONTENTS

I.        BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.       JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
III.      PARTIES BOUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
IV.       DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
V.        GENERAL PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
VI.       PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS . . . . . . . . . . . . . . . . . . . . 8
VII.      REMEDY REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
VIII.     QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS . . . . . . . . . . . . . . . . . . . . 12
IX.       ACCESS AND INSTITUTIONAL CONTROLS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
X.        REPORTING REQUIREMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
XI.       EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . 18
XII.      PROJECT COORDINATORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
XIII.     PERFORMANCE GUARANTEE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
XIV.      CERTIFICATION OF COMPLETION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
XV.       EMERGENCY RESPONSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
XVI.      PAYMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
XVII.     INDEMNIFICATION AND INSURANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
XVIII.    FORCE MAJEURE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
XIX.      DISPUTE RESOLUTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
XX.       STIPULATED PENALTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
XXI.      COVENANTS BY PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37
XXII.     COVENANTS BY SETTLING DEFENDANTS AND SETTLING FEDERAL AGENCIES . . . . . 42
XXIII.    EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION . . . . . . . . . . . . . . . . . . . . 44
XXIV.     ACCESS TO INFORMATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
XXV.      RETENTION OF RECORDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
XXVI.     NOTICES AND SUBMISSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
XXVII.    EFFECTIVE DATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
XXVIII.   RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
XXIX.     APPENDICES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48
XXX.      COMMUNITY RELATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
XXXI.     MODIFICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49
XXXII.    LODGING AND OPPORTUNITY FOR PUBLIC COMMENT . . . . . . . . . . . . . . . . . . . . . 49
XXXIII.   SIGNATORIES/SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50
XXXIV.    FINAL JUDGMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

I. B<small>ACKGROUND</small>

A.     The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B.     The United States in its complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the Old Southington Landfill Superfund Site (the "Site") in Southington, Connecticut, together with accrued interest; and (2) performance of studies and response work by the defendants at the Site consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C.     In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Connecticut (the "State") on March 12, 2007 of negotiations with potentially responsible parties ("PRPs") regarding the implementation of the remedial design and remedial action for the Site, and EPA has provided the State with an opportunity to participate in such negotiations and be a party to this Consent Decree.

D.     The State has also filed a complaint against the Defendants in this Court alleging that the Defendants are liable to the State  under Section 107 of CERCLA, 42 U.S.C. § 9607, and Conn. Gen. Stats. § 22a-451, for recovery of the response costs incurred by the State and for the recovery of the costs and expenses to be incurred by the State in investigating, containing, removing, monitoring, or mitigating pollution and contamination allegedly caused by the Defendants.

E.     In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the United States Department of Interior and the United States National Oceanographic and Atmospheric Agency, and the State of Connecticut Department of Environmental Protection, by letter dated March 12, 2007 of negotiations with PRPs regarding the release of hazardous substances that may have resulted in injury to the natural resources under State and Federal trusteeship and encouraged the trustees to participate in the negotiation of this Consent Decree.

F.     The Settling Defendants that have entered into this Consent Decree do not admit any liability to the Plaintiffs or any matter of fact or law relating to the Site or arising out of the transactions or occurrences alleged in the complaints, nor do they acknowledge that the release or threatened release of hazardous substance(s) at or from the Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment. The Settling Federal Agencies do not admit any liability arising out of the transactions or occurrences alleged in any counterclaim asserted by the Settling Defendants or any claim by the State.

G.     Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, by publication in the Federal Register on September 21, 1984, 49 Fed. Reg. 37083.

H.     In response to a release or a substantial threat of a release of hazardous substances at or from the Site, the Town of Southington ("Town"), United Technologies Corp., Pratt & Whitney Division ("UTC"), and Solvents Recovery Service of New England ("SRSNE"), under EPA oversight, commenced the Remedial Investigation and Feasibility Study ("RI/FS") for the Site, pursuant to 40 C.F.R. § 300.430, on September 29, 1987.  SRSNE later became insolvent

and suspended participation in the RI/FS. In 1989, General Electric Company agreed to participate in the performance of the RI/FS. The Remedial Investigation was completed on December 10, 1993. EPA issued an addendum to the RI/FS ("RI") Report on May 23, 1994. An amended Feasibility Study to address ground water contamination was completed on June 1, 2006, and a supplemental Remedial Investigation Study was approved on June 19, 2006.

I.    Pursuant to Section 117 of CERCLA, 42 U.S.C. § 9617, EPA published notice of the completion of the supplemental RI/FS and of the proposed plan for remedial action on June 14, 2006, in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the proposed plan for remedial action. A copy of the transcript of the public meeting is available to the public as part of the administrative record upon which EPA based the selection of the response action.

J.    The decision by EPA on the groundwater remedial action to be implemented at the Site is embodied in a final Record of Decision, executed on September 29, 2006 ("2006 ROD") on which the State has given its concurrence. The 2006 ROD includes a responsiveness summary to the public comments. Notice of the final plan was published in accordance with Section 117(b) of CERCLA.

K.    Based on the information presently available to EPA and the State, EPA and the State believe that the Work will be properly and promptly conducted by the Settling Defendants if conducted in accordance with the requirements of this Consent Decree and its appendices.

L.    Solely for the purposes of Section 113(j) of CERCLA, the Remedial Action selected by the 2006 ROD and the Work to be performed by the Settling Defendants shall constitute a response action taken or ordered by the President, for which judicial review shall be limited to the Administrative Record.

M.    The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Defendants. Solely for the purposes of this Consent Decree and the underlying complaints, Settling Defendants waive all objections and defenses that they may have to jurisdiction of the Court or to venue in this District. Settling Defendants shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.    This Consent Decree applies to and is binding upon the United States and the State and upon Settling Defendants and their heirs, successors, and assigns. Any change in ownership or corporate status of a Settling Defendant including, but not limited to, any transfer

of assets or real or personal property, shall in no way alter such Settling Defendant's responsibilities under this Consent Decree.

     3.     Settling Defendants shall provide a copy of this Consent Decree to each contractor hired to perform the Work (as defined below) required by this Consent Decree and to each person representing any Settling Defendant with respect to the Site or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendants or their contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendants shall nonetheless be responsible for ensuring that their contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendants within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

     4.     Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"1994 ROD" shall mean the Record of Decision issued on September 28, 1994.

"2009 OSL *De Minimis* Settlement" shall mean the "2009 *De Minimis* Settlement Regarding Old Southington Landfill Superfund Site" to be filed with the United States District Court for the District of Connecticut.

"2009 OSL *De Minimis* Settlement Trust" shall mean the Old Southington Landfill Superfund Site Trust Account established by the Settling Defendants on May 27, 2009 at CitiGroup Global Markets/SmithBarney, to receive certain settlement and other payments regarding the Site from the parties to the 2009 OSL *De Minimis* Settlement.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIX). In the event of conflict between this Decree and any appendix, this Decree shall control.

"CTDEP" shall mean the Connecticut Department of Environmental Protection, which operates under the direction of the Commissioner of Environmental Protection as provided in Conn. Gen. Stat. § 22a-2 and pursuant to the powers enumerated in Conn. Gen. Stat. § 22a-6, and any successor departments or agencies of the State.

"Day" shall mean a calendar day unless expressly stated to be a working day. "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

3

"DOI" shall mean the United States Department of the Interior and any successor departments, agencies or instrumentalities of the United States.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 127.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Oversight Costs" shall mean all costs, including but not limited to direct and indirect costs, that EPA and its representatives (including contractors) incur after the Effective Date in conducting the following activities: reviewing, discussing, commenting on and attending meetings related to plans, proposals, studies, reports or other items related to the Work; verifying the Work; and overseeing Settling Defendants' implementation of the Work and compliance with the Consent Decree relating to the Work. Future Oversight Costs shall include, but not be limited to, payroll costs, costs incurred by EPA and its representatives (including contractors) under or in connection with a contract or arrangement for technical assistance in overseeing and reviewing the conduct of activities required under the Consent Decree, travel costs, laboratory costs, technical support costs, interagency and intergovernmental agreement costs (including ATSDR costs), costs under a cooperative agreement with the State, and data management costs, insofar as such costs are incurred for activities listed in the first sentence of this definition.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs after the Effective Date pursuant to the provisions of this Consent Decree other than those costs specifically included in the definition of Future Oversight Costs. Future Response Costs shall include but not be limited to costs incurred to enforce the Consent Decree (including dispute resolution); costs incurred pursuant to Sections VII (Remedy Review), IX (Access and Institutional Controls) (including the cost of attorney time and monies paid to secure access and/or to secure or implement institutional controls, including the amount of just compensation), XV (Emergency Response), and Paragraph 103 (Work Takeover) of Section XXI (Covenants by Plaintiffs); enforcement support costs; and accrued Interest. Future Response Costs shall not include any costs incurred, including but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to the the Consent Decree regarding the Interim Remedy that was approved by the United States District Court of the District of Connecticut on June 9, 1998 in Civ. No. 3:98cv8 and on June 12, 1998 in Civ. No. 3:98cv236 ("1998 Consent Decree"), verifying the work under the 1998 Consent Decree, or otherwise implementing, overseeing, or enforcing the 1998 Consent Decree, and costs associated with the implementation of response actions relating in any way to the GA Area beyond those limited investigation activities described in and required by Section IV.D of the SOW or response actions related in any way to the former Lori Corp. property beyond those limited water level monitoring activities described in and required by Section IV.C.3.c. of the SOW.

"GA Area" shall mean the GA area as shown on the map attached as Attachment 1 to the SOW.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest

4

shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Municipal solid waste" shall mean waste material: (a) generated by a household (including a single or multifamily residence); or (b) generated by a commercial, industrial or institutional entity, to the extent that the waste material (i) is essentially the same as waste normally generated by a household; (ii) is collected and disposed of with other municipal solid waste as part of normal municipal solid waste collection services; and (iii) contains a relative quantity of hazardous substances no greater than the relative quantity of hazardous substances contained in waste material generated by a typical single-family household.

"Natural Resources" shall mean "natural resources" as that term is defined in Section 101(16) of CERCLA, 42 U.S.C. § 9601(16).

"Natural Resource Damages" shall mean damages for injury to, destruction of, or loss of natural resources relating to the Site, including the reasonable cost of assessing such damages, as provided in Section 107(a)(4)(C) of CERCLA, 42 U.S.C. § 9607(a)(4)(C), and, for purposes of the State's claim shall also mean for damages for injury to, destruction of, or loss of natural resources relating to the Site, as provided in Conn. Gen. Stat. §§ 22a-6a and 22a-14 through 22a-20, inclusive.

"NR Trustees" shall mean the designated federal and state officials who may act on behalf of the public as trustees for the Natural Resources regarding the Site, namely the National Oceanic and Atmospheric Administration and DOI represented by the Fish and Wildlife Service as the federal Trustees for Natural Resources regarding the Site, and the Commissioner of CTDEP as the State trustee for Natural Resources.

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Operation and Maintenance" or "O & M" shall mean that portion of the Work required to maintain the effectiveness of the Remedial Action as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree and the Statement of Work ("SOW").

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States, the State of Connecticut, and the Settling Defendants.

"Performance Standards" shall mean the cleanup standards and other measures of achievement of the goals of the Remedial Action, set forth in the ROD and Section IV of the SOW.

"Plaintiffs" shall mean the United States and the State of Connecticut.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq*. (also known as the Resource Conservation and Recovery Act).

"Record of Decision" or "2006 ROD" shall mean the EPA Record of Decision relating to

5

the Site signed on September 29, 2006 by the Director, Office of Site Remediation and Restoration, EPA Region 1, and all attachments thereto. The 2006 ROD is attached as Appendix A.

"Remedial Action" shall mean the Work, except for Operation and Maintenance, to be undertaken by the Settling Defendants to implement the 2006 ROD, in accordance with the SOW and the final Remedial Design and Remedial Action Work Plans and other plans approved by EPA.

"Remedial Action Work Plan" shall mean the document developed pursuant to Paragraph 11 of this Consent Decree and approved by EPA, and any amendments thereto.

"Remedial Design" shall mean those activities to be undertaken by the Settling Defendants to develop the final plans and specifications for the Remedial Action pursuant to the Remedial Design Work Plan.

"Remedial Design Work Plan" shall mean the document developed pursuant to Paragraph 10 of this Consent Decree and approved by EPA, and any amendments thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendants" shall mean the GenCorp Inc., Kraft Foods Global Inc., Shell Oil Company, Town of Southington, Connecticut, and United Technologies Corporation.

"Settling Federal Agencies" shall mean the following departments, agencies, and instrumentalities of the United States: United States General Services Administration and the United States Department of Defense, including the United States Department of the Army and the United States Department of the Navy, and their predecessor, component and successor agencies.

"Site" shall mean the Old Southington Landfill Superfund Site, encompassing approximately 13 acres of the former landfill located on the east side of Old Turnpike Road, in Southington, Hartford County, Connecticut as well as all areas where contamination from the landfill has come to be located in Southington, and depicted generally on the map attached as Appendix B and entitled "Figure 1-1 Study Area Old Southington Landfill Superfund Site."

"State" shall mean the State of Connecticut.

"Statement of Work" or "SOW" shall mean the Statement of Work for implementation of the Remedial Design, Remedial Action, and Operation and Maintenance at the Site, as set forth in Appendix C to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Subparagraph" shall mean a portion of this Consent Decree identified by a lower case letter.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendants to supervise and direct the implementation of the Work under this Consent Decree.

"Town" shall mean the Town of Southington, Connecticut.

"United States" shall mean the United States of America, including all of its departments, agencies, and instrumentalities, which includes without limitation EPA, the Settling Federal

Agencies, and any federal NR Trustee.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any "pollutant or contaminant" under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27); and (4) any "hazardous waste" under Sections 22a-449(c)-100 through 22a-449(c)-110 and Section 22a-449(c)-11 of the Regulations of Connecticut State Agencies and Conn. Gen. Stat. § 22a-115.

"Work" shall mean all activities Settling Defendants are required to perform under this Consent Decree, except those required by Section XXV ("Retention of Records"). The Work does not include: (1) additional response actions relating in any way to the GA Area beyond those limited investigation activities described in and required by Section IV.D of the SOW; or (2) the "Pre-Design studies" at the former Lori Corp. property as such "Pre-Design studies" are described in Part 2, Section L.1.B.1.5. of the 2006 ROD. The Settling Defendants provided a report showing no hydraulic connection between the contaminated groundwater areas on the former Lori Corp. property and groundwater from the Old Southington Landfill. EPA concurred with the findings and determined that the "Pre-Design studies" at the former Lori Corp. property are completed and fully satisfy the ROD requirement.

## V. GENERAL PROVISIONS

5.   Objectives of the Parties. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Site by the design and implementation of response actions at the Site by the Settling Defendants, to reimburse response costs of the Plaintiffs, and to resolve the claims of Plaintiffs against Settling Defendants and the claims of the State and Settling Defendants which have been or could have been asserted against the United States with regard to this Site as provided in this Consent Decree.

6.   Commitments by Settling Defendants and Settling Federal Agencies.

a.   Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the 2006 ROD, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree. Settling Defendants shall also reimburse the United States for Future Response Costs as provided in this Consent Decree.

b.   The obligations of Settling Defendants to finance and perform the Work under this Consent Decree, and to compensate the United States and the State for damages to Natural Resources are joint and several. In the event of the insolvency or other failure of one or more Settling Defendant to implement the requirements of this Consent Decree, the remaining Settling Defendants shall complete all such requirements.

c.   Settling Federal Agencies shall pay a share of the cost of the Work, EPA's Future Response Costs and shall compensate the United States and the State for damages to Natural Resources under their trusteeship as provided for in this Consent Decree.

7.   Compliance With Applicable Law. All activities undertaken by Settling Defendants pursuant to this Consent Decree shall be performed in accordance with the

7

requirements of all applicable federal and state laws and regulations. Settling Defendants must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the 2006 ROD ("ARARs"). The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.    Permits.

a.    As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (*i.e.*, within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendants shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.    The Settling Defendants may seek relief under the provisions of Section XVIII ("Force Majeure") for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.    This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

VI. PERFORMANCE OF THE WORK BY SETTLING DEFENDANTS

9.    Selection of Supervising Contractor.

a.    All aspects of the Work to be performed by Settling Defendants pursuant to Sections VI ("Performance of the Work by Settling Defendants"), VII ("Remedy Review"), VIII ("Quality Assurance, Sampling and Data Analysis"), and XV ("Emergency Response") shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA, after a reasonable opportunity for review and comment by the State. Within ten days after the lodging of this Consent Decree, Settling Defendants shall notify EPA and the State in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor. With respect to any contractor proposed to be Supervising Contractor, Settling Defendants shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan ("QMP") or equivalent documentation as determined by EPA. The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA will issue a notice of disapproval or an authorization to proceed. If at any time thereafter, Settling Defendants propose to change a Supervising Contractor, Settling Defendants shall give such notice to EPA and the State and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by the State, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

a.    If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendants in writing. Settling Defendants shall submit to EPA and the State a list of

contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the contractor previously proposed. EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors. Settling Defendants may select any contractor from that list that is not disapproved and shall notify EPA and the State of the name of the contractor selected within 21 days of EPA's authorization to proceed.

      b.    If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendants from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendants may seek relief under the provisions of Section XVIII (Force Majeure) hereof.

      10.    <u>Remedial Design</u>.

      a.    Consistent with the deadlines provided in the SOW, Settling Defendants shall submit to EPA and the State the deliverables required as part of the Remedial Design, as set forth in Section V of the SOW, including, but not limited to, a work plan for the design of the Remedial Action at the Site ("Remedial Design Work Plan" or "RD Work Plan"). The Remedial Design Work Plan shall provide for design of the remedy set forth in the 2006 ROD, in accordance with the SOW, and for achievement of the Performance Standards and other requirements set forth in the 2006 ROD, this Consent Decree, and/or the SOW. Upon its approval by EPA, the Remedial Design Work Plan shall be incorporated into and become enforceable under this Consent Decree. Consistent with the deadlines provided in the SOW, the Settling Defendants shall submit to EPA and the State a Health and Safety Plan for field design activities which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

      b.    Upon approval of the Remedial Design Work Plan by EPA, after a reasonable opportunity for review and comment by the State, and submittal of the Health and Safety Plan for all field activities to EPA and the State, Settling Defendants shall implement the activities required under the Remedial Design Work Plan. The Settling Defendants shall submit to EPA and the State all plans, submittals, and other deliverables required under the approved Remedial Design Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI ("EPA Approval of Plans and Other Submissions"). Unless otherwise directed by EPA, Settling Defendants shall not commence Remedial Design activities at the Site prior to approval of the Remedial Design Work Plan. Upon approval by EPA of the other Remedial Design deliverables required under the SOW, Settling Defendants shall implement the activities required by such deliverables.

      11.    <u>Remedial Action</u>.

      a.    Consistent with the deadlines provided in the SOW, the Settling Defendants shall submit to EPA and the State the deliverables required as part of the Remedial Action, as set forth in Section VI of the SOW, including, but not limited to, a work plan for the performance of the Remedial Action at the Site ("Remedial Action Work Plan"). The Remedial Action Work Plan shall provide for construction and implementation of the remedy set forth in the 2006 ROD and achievement of the Performance Standards, in accordance with this Consent Decree, the 2006 ROD, the SOW, and the design plans and specifications developed in

accordance with the Remedial Design Work Plan and approved by EPA. Upon its approval by EPA, the Remedial Action Work Plan shall be incorporated into and become enforceable under this Consent Decree. At the same time as they submit the Remedial Action Work Plan, Settling Defendants shall submit to EPA and the State a Health and Safety Plan for field activities required by the Remedial Action Work Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120. The Settling Defendants shall submit to EPA for approval all other Remedial Action plans, submittals, and deliverables described in the SOW, in accordance with the schedule set forth in the SOW and the approved Remedial Action Work Plan.

b.       Upon approval of the Remedial Action Work Plan by EPA, after a reasonable opportunity for review and comment by the State, the Settling Defendants shall implement the activities required under the Remedial Action Work Plan. The Settling Defendants shall submit to EPA and the State all plans, submittals, or other deliverables required under the approved Remedial Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section XI ("EPA Approval of Plans and Other Submissions"). Unless otherwise directed by EPA, Settling Defendants shall not commence physical Remedial Action activities at the Site prior to approval of the Remedial Action Work Plan. Upon approval by EPA of the other Remedial Action deliverables required under the SOW, Settling Defendants shall implement the activities required by such deliverables.

12.      The Settling Defendants shall continue to implement the Remedial Action and O & M until the Performance Standards are achieved and for so long thereafter as is otherwise required under this Consent Decree.

13.      Modification of the SOW or Related Work Plans.

a.       If EPA determines that modification to the Work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the remedy set forth in the 2006 ROD, EPA shall notify the Settling Defendants in writing and may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this Paragraph to the extent that it is consistent with the scope of the remedy selected in the 2006 ROD. EPA will confer with the Settling Defendants prior to requiring a modification of the SOW or of the work plans developed pursuant thereto.

b.       For the purposes of this Paragraph 13 and Paragraphs 51 and 52 only, the "scope of the remedy selected in the 2006 ROD" shall mean the actions described in Section L of the 2006 ROD, including, but not limited to, the following: (1) Institutional Controls in the form of Environmental Land Use Restrictions as defined by CT RSRs; (2) Building Ventilation (subslab depressurization systems or similar technology) in existing buildings and controlling vapors in new buildings; (3) Groundwater monitoring; (4) Operating, maintaining and monitoring engineering and institutional controls; and (5) Conducting five year reviews, all as provided in Section III of the SOW.

c.       If the Settling Defendants object to any modification determined by EPA to be necessary pursuant to this Paragraph, they may seek dispute resolution pursuant to Section XIX ("Dispute Resolution").

10

d.     Settling Defendants shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

e.     Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

14.     Settling Defendants acknowledge and agree that nothing in this Consent Decree, the SOW, or the Remedial Design or Remedial Action Work Plans constitutes a warranty or representation of any kind by Plaintiffs that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

15.     a.     Settling Defendants shall, prior to any off-Site shipment of Waste Material from the Site to a waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed ten cubic yards or the equivalent in liquid units.

(1)     The Settling Defendants shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. The Settling Defendants shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2)     The identity of the receiving facility and state will be determined by the Settling Defendants following the award of the contract for Remedial Action construction. The Settling Defendants shall provide the information required by Paragraph 16.a as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b.     Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-Site location, Settling Defendants shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440.

## VII. REMEDY REVIEW

16.     Periodic Review. Settling Defendants shall conduct any studies and investigations as requested by EPA, in order to permit EPA to conduct reviews of whether the Remedial Action is protective of human health and the environment at least every five years as required by Section 121(c) of CERCLA and any applicable regulations. EPA will confer, in good faith, with the Settling Defendants before requiring the performance of such studies and investigations.

17.     EPA Selection of Further Response Actions. If EPA determines, at any time, that the Remedial Action is not protective of human health and the environment, EPA may select further response actions for the Site in accordance with the requirements of CERCLA and the NCP.

11

18.     Opportunity To Comment. Settling Defendants and, if required by Sections 113(k)(2) or 117 of CERCLA, the public, will be provided with an opportunity to comment on any further response actions proposed by EPA as a result of the review conducted pursuant to Section 121(c) of CERCLA and to submit written comments for the record during the comment period.

19.     Settling Defendants' Obligation To Perform Further Response Actions. If EPA selects further response actions for the Site, other than response actions relating in any way to the GA Area and/or response actions related in any way to the former Lori Corp. property, the Settling Defendants shall undertake such further response actions to the extent that the reopener conditions in Paragraph 93 or Paragraph 94 (United States' reservations of liability based on unknown conditions or new information) are satisfied. Settling Defendants may invoke the procedures set forth in Section XIX ("Dispute Resolution") to dispute (1) EPA's determination that the reopener conditions of Paragraph 93 or Paragraph 94 of Section XXI ("Covenants by Plaintiffs") are satisfied, (2) EPA's determination that the Remedial Action is not protective of human health and the environment, or (3) EPA's selection of the further response actions. Disputes pertaining to whether the Remedial Action is protective or to EPA's selection of further response actions shall be resolved pursuant to Section XIX (Dispute Resolution) Paragraph 74.

20.     Submissions of Plans. If Settling Defendants are required to perform the further response actions pursuant to Paragraph 19, they shall submit a plan for such work to EPA for approval in accordance with the procedures set forth in Section VI ("Performance of the Work by Settling Defendants") and shall implement the plan approved by EPA in accordance with the provisions of this Consent Decree.

VIII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

21.     Settling Defendants shall use quality assurance, quality control, and chain of custody procedures for all samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001), "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/240/R-02/009, December 2002), "EPA New England Quality Assurance Project Plan Program Guidance," April 2005, and subsequent amendments to such guidelines upon notification by EPA to the Settling Defendants of such amendment. Amended guidelines shall apply only to procedures conducted after such notification. Prior to the commencement of any sampling or monitoring project under this Consent Decree, the Settling Defendants shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Sampling and Analysis Plan ("SAP"), which includes, among other things, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP, and applicable guidance documents. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Consent Decree. Settling Defendants shall ensure that EPA and State personnel and their authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendants in implementing this Consent Decree. In addition, Settling Defendants shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring. Settling Defendants shall ensure that the laboratories they utilize for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are

documented in the "Contract Lab Program Statement of Work for Organic Analysis" (Multi-Media, Multi-Concentration Organics Analysis, SOMO1.1, which can be found at http://www.epa.gov/superfund/programs/clp/som1.htm) and the "Contract Lab Program Statement of Work for Inorganic Analysis," (Multi-Media, Multi-Concentration Inorganic Analysis, ILM05.3, which can be found at http://www.epa.gov/superfund/programs/clp/ilm5.htm) and any amendments made thereto during the course of the implementation of this Consent Decree; however, upon approval by EPA, after opportunity for review and comment by the State, the Settling Defendants may use other analytical methods which are as stringent as or more stringent than the CLP-approved methods. Settling Defendants shall contractually require all laboratories they use for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Defendants shall only use laboratories that have a documented Quality System which complies with ANSI/ASQ E4-2004, "Quality Systems for Environmental Data and Technology Programs: Requirements with Guidance for Use," and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program ("NELAP") as meeting the Quality System requirements. Settling Defendants shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

22.     Upon request, the Settling Defendants shall allow split or duplicate samples to be taken by EPA and the State or their authorized representatives. Settling Defendants shall notify EPA and the State not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA and the State shall have the right to take any additional samples that EPA or the State deem necessary. Upon request, EPA and the State shall allow the Settling Defendants to take split or duplicate samples of any samples they take as part of the Plaintiffs' oversight of the Settling Defendants' implementation of the Work and shall provide Settling Defendants with copies of all sampling data.

23.     Settling Defendants shall submit two copies to EPA and two copies to the State of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendants with respect to the Site and/or the implementation of this Consent Decree, unless EPA specifies or the approved QAPP provides for another number of copies.

24.     Notwithstanding any provision of this Consent Decree, the United States and the State hereby retain all of their information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

IX. ACCESS AND INSTITUTIONAL CONTROLS

25.     If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled (including rights to access and/or rights to impose land/water use restrictions) by any of the Settling Defendants, such Settling Defendants shall:

a.     commencing on the date of lodging of this Consent Decree, provide the United States, the State, and their representatives, including EPA and its contractors, with access

at all reasonable times to the Site, or such other property, for the purpose of conducting any activity related to this Consent Decree including, but not limited to, the following activities:

    (1)    Monitoring the Work;

    (2)    Verifying any data or information submitted to the United States or the State;

    (3)    Conducting investigations relating to contamination at or near the Site;

    (4)    Obtaining samples;

    (5)    Assessing the need for, planning, or implementing additional response actions at or near the Site;

    (6)    Assessing implementation of quality assurance and quality control practices as defined in the approved Quality Assurance Project Plans;

    (7)    Implementing the Work pursuant to the conditions set forth in Paragraph 103 ("Work Takeover");

    (8)    Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendants or their agents, consistent with Section XXIV ("Access to Information");

    (9)    Assessing Settling Defendants' compliance with this Consent Decree; and

    (10)    Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree.

    b.    commencing on the date of lodging of this Consent Decree, refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such restrictions include, but are not limited to, (1) prohibiting activities that could harm the capped areas of the Site; (2) prohibiting use of contaminated groundwater; (3) prohibiting activities that could result in exposure to contaminants in the subsurface soils and groundwater; and (4) ensuring that any new structures on the Site will be constructed to minimize potential risk of inhalation of contaminants.

    c.    execute and record with the Town Clerk, Town of Southington, County of Hartford, State of Connecticut, an easement and environmental land use restriction, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25.a of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 25.b, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such Settling Defendants shall grant the access rights and the rights to enforce the land/water use restrictions to (i) the United States, on behalf of EPA, and its

14

representatives, (ii) the State and its representatives, (iii) the other Settling Defendants and their representatives, and/or (iv) other appropriate grantees. Such Settling Defendants shall, within 45 days of entry of this Consent Decree, submit to EPA for review and approval with respect to such property:

>        (1)    A draft easement and environmental land use restriction, in substantially the form attached hereto as Appendix D, that is enforceable under the laws of the State of Connecticut, and

>        (2)    a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

Within 15 days of EPA's approval and acceptance of the easement and title evidence, such Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, record the easement with the Town Clerk, Town of Southington, County of Hartford, State of Connecticut. Within 30 days of the recording of the easement, Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If the easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

26.    Consistent with the deadlines provided in the SOW, if the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than any of the Settling Defendants, the Settling Defendants shall use best efforts to secure from such persons:

a.    an agreement to provide access thereto for the Settling Defendants, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25.a;

b.    an agreement, enforceable by the Settling Defendants and the United States, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the remedial measures to be performed pursuant to this Consent Decree. Such restrictions include, but are not limited to, those listed in Paragraph 25(b); and

c.    the execution and recordation with the Town Clerk, Town of Southington, County of Hartford, State of Connecticut, of an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 25.a of this Consent Decree, and (ii) grants the right to enforce the land/water use restrictions listed in Paragraph 25.b of this Consent Decree, or other restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the remedial measures to be performed

pursuant to this Consent Decree. The access rights and/or rights to enforce land/water use restrictions shall be granted to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Settling Defendants and their representatives, and/or (iv) other appropriate grantees. Within 45 days of entry of this Consent Decree, Settling Defendants shall submit to EPA for review and approval with respect to such property:

(1)     A draft easement, in substantially the form attached hereto as Appendix D, that is enforceable under the laws of the State of Connecticut, and

(2)     a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendants are unable to obtain release or subordination of such prior liens or encumbrances).

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, Settling Defendants shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the easement shall be recorded with Town Clerk, Town of Southington, County of Hartford, State of Connecticut. Within 30 days of the recording of the easement, Settling Defendants shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps. If easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

27.     Consistent with the deadlines provided in the SOW, and for purposes of Paragraphs 25 and 26, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien or encumbrance. If (a) any access or land/water use restriction agreements required by Paragraphs 26.a or 26.b are not obtained by the deadlines provided in the SOW, (b) any access easements or restrictive easements required by Paragraph 26.c are not submitted to EPA in draft form by the deadlines provided in the SOW, or (c) Settling Defendants are unable to obtain an agreement pursuant to Paragraph 25.c(1) or Paragraph 26.c(1) from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this Consent Decree by the deadlines provided in the SOW, Settling Defendants shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendants have taken to attempt to comply with Paragraph 25 or 26. At the request of Settling Defendants, the United States may, as it deems appropriate, assist Settling Defendants in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance. Settling Defendants shall reimburse the United States in accordance with the procedures in Section XVI ("Payments for Response Costs"), for all costs incurred, direct or indirect, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation. If, after having satisfied "best efforts" the Settling Defendants cannot obtain a release or subordination of

the outstanding liens on account of unpaid taxes, easements, or existing mortgages on the Chuck & Eddies, Radio Station, or the Highland Hills Subdivision properties, the Settling Defendants shall seek a waiver from the State pursuant to Conn. Gen. Stat. Section 22a-133o.

28.     If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances, or other governmental controls are needed to implement the remedy selected in the 2006 ROD, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendants shall cooperate with EPA's and the State's efforts to secure such governmental controls.

29.     Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, as well as all of their rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

## X. REPORTING REQUIREMENTS

30.     In addition to any other requirement of this Consent Decree, Settling Defendants shall submit two copies to EPA and two copies to the State (or such other number of copies, if specified by EPA) of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendants or their contractors or agents in the previous month; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next six weeks and provide other information relating to the progress of construction; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Defendants have proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next six weeks. Settling Defendants shall submit these progress reports to EPA and the State by the tenth day of every month following the lodging of this Consent Decree until EPA notifies the Settling Defendants pursuant to Paragraph 52.b of Section XIV ("Certification of Completion"). If requested by EPA or the State, Settling Defendants shall also provide briefings for EPA and the State to discuss the progress of the Work. As provided in the SOW, monthly progress reporting will terminate as of the date of EPA approval of the final Construction Completion Report, which triggers commencement of the O & M period. O & M reporting will occur through submission of those reports specified in the SOW.

31.     The Settling Defendants shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

32.     Upon the occurrence of any event during performance of the Work that Settling Defendants are required to report pursuant to Section 103 of CERCLA or Section 304 of the

Emergency Planning and Community Right-to-Know Act ("EPCRA"), Settling Defendants shall, no later than the time required for any notification under Section 103(a) of CERCLA or Section 304(b) of EPCRA, orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region 1, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

33.     Within 20 days of the time required for a notification of such an event under Section 103(a) of CERCLA or Section 304(b) of EPCRA, Settling Defendants shall furnish to Plaintiffs a written report, signed by the Settling Defendants' Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within 30 days of the conclusion of such an event or the time required for a notification of such an event under Section 103(a) of CERCLA or Section 304(b) of EPCRA, Settling Defendants shall submit a report setting forth all actions taken in response thereto.

34.     Settling Defendants shall submit two copies (or such other number of copies, if specified by EPA) of all plans, reports, and data required by the SOW, the Remedial Design Work Plan, the Remedial Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Settling Defendants shall simultaneously submit two copies of all such plans, reports, and data to the State. Upon request by EPA, Settling Defendants shall submit in electronic form all portions of any report or other deliverable Settling Defendants are required to submit pursuant to the provisions of this Consent Decree.

35.     All reports and other documents submitted by Settling Defendants to EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendants' compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendants.

## XI. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

36.     After review of any plan, report, or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall, based upon the submission's consistency with the ROD, SOW and applicable work plans as determined by EPA: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendants modify the submission; or (e) any combination of the above. However, EPA shall not modify a submission without first providing Settling Defendants at least one notice of deficiency and an opportunity to cure within 21 days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

37.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 36(a), (b), or (c), Settling Defendants shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to their right to invoke the Dispute Resolution procedures set forth in Section XIX ("Dispute

Resolution") with respect to the modifications or conditions made by EPA. In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 36(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XX ("Stipulated Penalties").

     38.   <u>Resubmission of Plans</u>.

         a.   Upon receipt of a notice of disapproval pursuant to Paragraph 36(d), Settling Defendants shall, within 21 days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval. Any stipulated penalties applicable to the submission, as provided in Section XX, shall accrue during the 21-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 39 and 40.

         b.   Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 36(d), Settling Defendants shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission. Implementation of any non-deficient portion of a submission shall not relieve Settling Defendants of any liability for stipulated penalties under Section XX ("Stipulated Penalties").

     39.   In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendants to correct the deficiencies, in accordance with the preceding Paragraphs. EPA also retains the right to modify or develop the plan, report, or other item. Settling Defendants shall implement any such plan, report, or item as modified or developed by EPA, subject only to their right to invoke the procedures set forth in Section XIX ("Dispute Resolution").

     40.   If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendants shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendants invoke the dispute resolution procedures set forth in Section XIX ("Dispute Resolution") and EPA's action is overturned pursuant to that Section. The provisions of Section XIX ("Dispute Resolution") and Section XX ("Stipulated Penalties") shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution. If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XX.

     41.   All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree. In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

XII. P<small>ROJECT</small> C<small>OORDINATORS</small>

     42.   Within ten days of lodging this Consent Decree, Settling Defendants, the State and EPA will notify each other, in writing, of the name, address, and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least five working days before the changes occur,

unless impracticable, but in no event later than the actual day the change is made. The Settling Defendants' Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendants' Project Coordinator shall not be an attorney for any of the Settling Defendants in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during remedial activities.

43.     Plaintiffs may designate other representatives, including, but not limited to, EPA and State employees, and federal and State contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager ("RPM") and an On-Scene Coordinator ("OSC") by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when s/he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

44.     EPA's Project Coordinator and the Settling Defendants' Project Coordinator will meet in person or by telephone, at a minimum, on a monthly basis.

### XIII. PERFORMANCE GUARANTEE

45.     In order to ensure the full and final completion of the Work, one or more of the Settling Defendants shall establish and maintain a Performance Guarantee for the benefit of EPA in the total amount of $695,000 (hereinafter "Estimated Cost of the Work") in one or more of the following forms, which must be satisfactory in form and substance to EPA:

a.      A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on Federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.      One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State agency;

c.      A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a U.S. Federal or State agency;

d.      A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a State agency;

e.      A demonstration that one or more Settling Defendants satisfy the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work, provided that all other requirements of 40 C.F.R. § 264.143(f) are satisfied;

     f.     Evidence as provided by the Town of Southington's referendum for its share of the cost of the Work; or

     g.     A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of a Settling Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with at least one Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test requirements of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work that it proposes to guarantee hereunder.

     46.     Settling Defendants have selected, and EPA has approved, as the Performance Guarantee pursuant to Paragraph 45, the 2009 OSL *De Minimis* Trust, and the trust agreement for such Trust is attached as Appendix E. Settling Defendants have submitted all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to the EPA Cincinnati Financial Office in accordance with Section XXVI ("Notices and Submissions"), with a copy to the Regional Financial Assurance Specialist, the United States, EPA, and the State as specified in Section XXVI.

     47.     If at any time during the effective period of this Consent Decree, the Settling Defendants provide a Performance Guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 45(e) or Paragraph 45(f) above, such Settling Defendant shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f), 40 C.F.R. § 264.151(f), and 40 C.F.R. § 264.151(h)(1) relating to these methods unless otherwise provided in this Consent Decree, including but not limited to: (i) the initial submission of required financial reports and statements from the relevant entity's chief financial officer and independent certified public accountant; (ii) the annual re-submission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (iii) the notification of EPA within 90 days after the close of any fiscal year in which such entity no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1). For purposes of the Performance Guarantee methods specified in this Section XIII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to refer to the Work required under this Consent Decree, and the terms "current closure cost estimate" "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to refer to the Estimated Cost of the Work.

     48.     In the event that EPA determines at any time that a Performance Guarantee provided by any Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that any Settling Defendant becomes aware of information indicating that a Performance Guarantee provided pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendants, within 30 days of receipt of notice of EPA's determination or, as the case may be, within 30 days of any Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 45 that satisfies all requirements set forth in this Section XIII. In seeking approval for a revised or alternative form of Performance Guarantee,

Settling Defendants shall follow the procedures set forth in Paragraph 50.b.(2). Settling Defendants' inability to post a Performance Guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendants to complete the Work in strict accordance with the terms hereof.

      49.     The commencement of any Work Takeover pursuant to Paragraph 103 shall trigger EPA's right to receive the benefit of any Performance Guarantee(s) provided pursuant to Paragraphs 45(a), (b), (c), (d), or (f), and at such time EPA shall have immediate access to resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover. If for any reason EPA is unable to promptly secure the resources guaranteed under any such Performance Guarantee(s), whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or in the event that the Performance Guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 45(e), Settling Defendants shall immediately upon written demand from EPA deposit into an account specified by EPA, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed as of such date, as determined by EPA.

      50.     <u>Modification of Amount and/or Form of Performance Guarantee</u>.

      a.     <u>Reduction of Amount of Performance Guarantee</u>. If Settling Defendants believe that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 45, Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the Performance Guarantee provided pursuant to this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the remaining Work to be performed. Settling Defendants shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the cost of the remaining Work to be performed and the basis upon which such cost was calculated. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendants shall follow the procedures set forth in Paragraph 50.b.(2). If EPA decides to accept such a proposal, EPA shall notify the petitioning Settling Defendants of such decision in writing. After receiving EPA's written acceptance, Settling Defendants may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance. In the event of a dispute, Settling Defendants may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute. No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraph 50.b.

      b.     <u>Change of Form of Performance Guarantee</u>.

      (1)     If, after the Effective Date, Settling Defendants desire to change the form or terms of any Performance Guarantee(s) provided pursuant to this Section, Settling Defendants may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder. The submission of such

22

proposed revised or alternative form of Performance Guarantee shall be as provided in Paragraph 50.b.(2). Any decision made by EPA on a petition submitted under this Subparagraph b.(2) shall, after considering the estimated cost of the remaining work to be performed, be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendants pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

(2)     Settling Defendants shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed instruments or other documents required in order to make the proposed Performance Guarantee legally binding. The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth or incorporated by reference in this Section. Settling Defendants shall submit such proposed revised or alternative form of Performance Guarantee to the EPA Cincinnati Financial Office, with a copy to the Regional Financial Assurance Specialist in accordance with Section XXVI ("Notices and Submissions"). EPA shall notify Settling Defendants in writing of its decision to accept or reject a revised or alternative Performance Guarantee submitted pursuant to this Subparagraph. Within ten days after receiving a written decision approving the proposed revised or alternative Performance Guarantee, Settling Defendants shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such Performance Guarantee(s) shall thereupon be fully effective. Settling Defendants shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee(s) legally binding to the EPA Cincinnati Financial Office within 30 days of receiving a written decision approving the proposed revised or alternative Performance Guarantee in accordance with Section XXVI ("Notices and Submissions"), with copies to the Regional Financial Assurance Specialist, the United States, EPA, and the State as specified in Section XXVI.

c.     Release of Performance Guarantee. If Settling Defendants receive written notice from EPA in accordance with Paragraph 51 that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Defendants in writing, Settling Defendants may thereafter release, cancel, or discontinue the Performance Guarantee(s) provided pursuant to this Section. Settling Defendants shall not release, cancel, or discontinue any Performance Guarantee provided pursuant to this Section except as provided in this Paragraph. In the event of a dispute, Settling Defendants may release, cancel, or discontinue the Performance Guarantee(s) required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.

## XIV. CERTIFICATION OF COMPLETION

51.     Completion of the Remedial Action.

a.     Within 90 days after Settling Defendants conclude that the Remedial

23

Action has been fully performed and the Performance Standards have been attained, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, EPA, and the State. If, after the pre-certification inspection, the Settling Defendants still believe that the Remedial Action has been fully performed and the Performance Standards have been attained, they shall submit a written report requesting certification to EPA for approval, with a copy to the State, pursuant to Section XI ("EPA Approval of Plans and Other Submissions") within 30 days of the inspection. In the report, a registered professional engineer and the Settling Defendants' Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree. The written report shall include as-built drawings signed and stamped by a professional engineer. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after completion of the pre-certification inspection and receipt and review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Remedial Action and achieve the Performance Standards, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the 2006 ROD," as that term is defined in Paragraph 13.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI ("EPA Approval of Plans and Other Submissions"). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to their right to invoke the dispute resolution procedures set forth in Section XIX ("Dispute Resolution").

        b.     If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the State, that the Remedial Action has been performed in accordance with this Consent Decree and that the Performance Standards have been achieved, EPA will so certify in writing to Settling Defendants. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Section XXI ("Covenants by Plaintiffs"). Certification of Completion of the Remedial Action shall not affect Settling Defendants' obligations under this Consent Decree.

52.    Completion of the Work.

a.     Within 90 days after Settling Defendants conclude that all phases of the Work (including O & M), have been fully performed, Settling Defendants shall schedule and conduct a pre-certification inspection to be attended by Settling Defendants, EPA, and the State. If, after the pre-certification inspection, the Settling Defendants still believe that the Work has been fully performed, Settling Defendants shall submit a written report by a registered professional engineer stating that the Work has been completed in full satisfaction of the requirements of this Consent Decree. The report shall contain the following statement, signed by a responsible corporate official of a Settling Defendant or the Settling Defendants' Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the written report, EPA, after reasonable opportunity to review and comment by the State, determines that any portion of the Work has not been completed in accordance with this Consent Decree, EPA will notify Settling Defendants in writing of the activities that must be undertaken by Settling Defendants pursuant to this Consent Decree to complete the Work, provided, however, that EPA may only require Settling Defendants to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the remedy selected in the 2006 ROD," as that term is defined in Paragraph 13.b. EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendants to submit a schedule to EPA for approval pursuant to Section XI ("EPA Approval of Plans and Other Submissions"). Settling Defendants shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to their right to invoke the dispute resolution procedures set forth in Section XIX ("Dispute Resolution").

b.     If EPA concludes, based on the initial or any subsequent request for Certification of Completion by Settling Defendants and after a reasonable opportunity for review and comment by the State, that the Work has been performed in accordance with this Consent Decree, EPA will so notify the Settling Defendants in writing.

XV. EMERGENCY RESPONSE

53.    In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendants shall, subject to Paragraph 54, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator. If neither of these persons is available, the Settling Defendants shall notify the EPA Emergency Response Unit, Region 1. Settling Defendants shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the

25

Contingency Plans, and any other applicable plans or documents developed pursuant to the SOW. In the event that Settling Defendants fail to take appropriate response action as required by this Section, and EPA or, as appropriate, the State take such action instead, Settling Defendants shall reimburse EPA and the State all costs of the response action not inconsistent with the NCP pursuant to Section XVI ("Payments for Response Costs").

54.     Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States, or the State, a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XXI ("Covenants by Plaintiffs").

## XVI. PAYMENTS

55.     Payment by Settling Defendants for Future Oversight Costs

a.      Within 30 days of the Effective Date, Settling Defendants shall pay to EPA $500,000 in payment for Future Oversight Costs. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing the USAO File Number, EPA Site/Spill ID Number 01-58, and DOJ Case Number 90-11-2-420/5. Payment shall be made in accordance with instructions provided to the Settling Defendants by the Financial Litigation Unit of the United States Attorney's Office for the District of Connecticut following lodging of the Consent Decree. Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

b.      At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, to EPA, and to the EPA Cincinnati Financial Office, in accordance with Section XXVI ("Notices and Submissions").

c.      The total amount to be paid by Settling Defendants pursuant to Paragraph 55 shall be deposited in the Old Southington Landfill Superfund Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

56.     Payments by Settling Defendants for Future Response Costs.

a.      Settling Defendants shall pay to EPA all Future Response Costs not inconsistent with the National Contingency Plan. On a periodic basis the United States will send Settling Defendants a bill requiring payment that consists of a Region 1 standard cost summary, which is a line-item summary of costs in dollars by category of costs (including but not limited to payroll, travel, indirect costs, and contracts) incurred by EPA and DOJ and their contractors. Settling Defendants shall make all payments within 30 days of Settling Defendants' receipt of each bill requiring payment, except as otherwise provided in Paragraph 57. Settling Defendants shall make all payments required by this Paragraph by a certified or cashier's check or checks made payable to "EPA Hazardous Substance Superfund," referencing the name and address of the party making the payment, EPA Site/Spill ID Number 01-58, and DOJ Case Number 90-11-

2-420/5.  Settling Defendants shall send the check(s) to:

> (For Delivery by First Class Mail)
> U.S. Environmental Protection Agency
> Superfund Payments
> Cincinnati Finance Center
> P.O. Box 979076
> St. Louis, MO 63197-9000
>
> (For Delivery by Overnight Mail)
> U.S. Bank
> 1005 Convention Plaza
> Mail Station SL-MO-C2GL
> St. Louis, MO 63101

        b.        At the time of payment, Settling Defendants shall send notice that payment has been made to the United States, to EPA, and to the EPA Cincinnati Financial Office, in accordance with Section XXVI ("Notices and Submissions").

        c.        The total amount to be paid by Settling Defendants pursuant to Subparagraph 56.a shall be deposited in the Old Southington Landfill Superfund Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

        57.        Settling Defendants may contest payment of any Future Response Costs under Paragraph 56 if they determine that the United States has made an accounting error or if they allege that a cost item that is included represents costs that are inconsistent with the NCP. Such objection shall be made in writing within 30 days of receipt of the bill and must be sent to the United States pursuant to Section XXVI ("Notices and Submissions"). Any such objection shall specifically identify the contested Future Response Costs and the basis for objection. In the event of an objection, the Settling Defendants shall within the 30 day period pay all uncontested Future Response Costs to the United States in the manner described in Paragraph 56. Simultaneously, the Settling Defendants shall establish an interest-bearing escrow account in a federally-insured bank duly chartered in the State of Connecticut and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs. The Settling Defendants shall send to the United States, as provided in Section XXVI ("Notices and Submissions"), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account. Simultaneously with establishment of the escrow account, the Settling Defendants shall initiate the Dispute Resolution procedures in Section XIX ("Dispute Resolution"). If the United States prevails in the dispute, within five days of the resolution of the dispute, the Settling Defendants shall pay the sums due (with accrued interest) to the United States in the manner described in Paragraph 56. If the Settling Defendants prevail concerning any aspect of the contested costs, the Settling Defendants shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States in the manner

described in Paragraph 56; Settling Defendants shall be disbursed any balance of the escrow account. The dispute resolution procedures set forth in this Paragraph in conjunction with the procedures set forth in Section XIX ("Dispute Resolution") shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendants' obligation to reimburse the United States for its Future Response Costs.

58.     In the event that the payments required by Paragraph 55 are not made within 30 days of the Effective Date or the payments required by Paragraph 56 are not made within 30 days of the Settling Defendants' receipt of the bill, Settling Defendants shall pay Interest on the unpaid balance. The Interest to be paid on the payment for Future Oversight Costs under this Paragraph shall begin to accrue 30 days after the Effective Date. The Interest on Future Response Costs shall begin to accrue on the date of the bill. The Interest shall accrue through the date of the Settling Defendants' payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiffs by virtue of Settling Defendants' failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 79. The Settling Defendants shall make all payments required by this Paragraph in the manner described in Paragraph 56.

59.     Payment by Settling Federal Agencies. As soon as reasonably practical as of the Effective Date, the United States, on behalf of the Settling Federal Agencies, shall cause $507,960.23 to be paid to United Technologies Corporation ("UTC"). This payment is for Settling Federal Agencies' share of the estimated cost of the Work, Future Response Costs and Natural Resource Damages, including premiums to cover the risk of cost overruns and other contingencies, and a premium to cover the risk that additional work may be required in the Highland Hills subdivision west of the Site. The payment to UTC shall be made by check made payable to UTC or by wire in accordance with the wiring instructions specified by UTC.

60.     In the event that payment required by Paragraph 59 is not made within 120 days of the Effective Date, Interest on the unpaid balance shall be paid commencing on the 121st day following the Effective Date and accruing through the date of the payment.

61.     The Parties to this Consent Decree recognize and acknowledge that the payment obligations of the Settling Federal Agencies under this Consent Decree can only be paid from appropriated funds legally available for such purpose. Nothing in this Consent Decree shall be interpreted or construed as a commitment or requirement that any Settling Federal Agency obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable provision of law.

62.     Payment by Settling Defendants for Federal Natural Resource Damages. Within 30 days of the Effective Date, Settling Defendants shall pay $537,000 to DOI for Natural Resource Damages. Of this amount, $13,455.85 is to reimburse the DOI for past assessment costs and $523,544.15 is for natural resource damages and is to be spent for restoration, replacement or acquisition of the equivalent of the natural resource injuries associated with the Site, including planning, oversight, monitoring, and other allowable expenditures associated with such restoration, replacement or acquisition. Payment to DOI shall be made in accordance with instructions provided by DOI after the Effective Date. Notice that this payment has been made shall be sent to: Department of the Interior, Natural Resource Damage Assessment and Restoration Fund, Attn: Restoration Fund Manager, 1849 C Street, N.W., Washington, DC

28